HOPE NATURAL GAS COMPANY *v.* PUBLIC SERVICE COMMISSION *et al.*

(No. 7013)

Submitted April 19, 1932. Decided April 26, 1932.

224

*Chas. Powell, Kemble White, A. F. McCue,* and *H. M. Garrett,* for appellant.

*Clyde B. Johnson,* and *Chas. R. Webber,* for respondent Baltimore & Ohio R. Co.

WOODS, JUDGE:

The Hope Natural Gas Company seeks to have an order of the Public Service Commission, establishing a 98-cent rate per ton on coal shipped from the Laura Lee mine to Hastings, a distance of 28.4 miles, on the "Short Line," set aside on the theory that the evidence of the Baltimore & Ohio Railroad Company was insufficient to justify the same.

Early in 1929, the Hutton Coal Company made complaint to the commission that the carrier in making a charge of $1.01 per ton from its Seminole mine to Hastings (31.2 miles), and only 88 cents from Laura Lee, was discriminating against it. The carrier, upon an order, dated October 5, 1929, to cease such discrimination, boosted the Laura Lee rate to $1.01. A like rate was at that time in effect from the Katherine mine (30.3 miles). The gas company, complainant herein, who was, at that time, purchasing a large tonnage yearly from the Laura Lee mine, filed a formal objection to the proposed tariff. Evidence was taken and the rates from

Laura Lee, Seminole and Katherine mines (the latter on special petition by the complainant) established at 98 cents per ton.

Our statute (Code 1923, chapter 15-0, sections 4 and 5) requires the rate to be reasonable and just, and in no case "more than the service is reasonably worth, considering the cost thereof." The burden admittedly was on the carrier to justify the proposed rate between Laura Lee and Hastings. In order to support it, the carrier examined trainmasters Bull and Theis in respect to the switching operations at the several mines, and introduced Shinnamon, who indentified and filed a complete schedule of the carrier's intrastate rates (based on 10 mile groupings, and multiples thereof). Attached to the exhibit is a summary which shows for distances between twenty and thirty miles, five 76-cent rates, eighty-three 88-cent rates, and twelve hundred and one 101-cent rates; and for distances between thirty and forty miles, it does not have a single rate under $1.01. Upon this evidence, the carrier rested its case. The complainant takes the position that such is not sufficient, especially in view of the testimony of its witness, Mr. Williamson, to the effect that 88 cents was a high rate in view of the service and costs. Thus is presented the sole question: Has the carrier borne the burden cast upon it by the law?

The Interstate Commerce Commission has uniformly held that mere comparison of rates without a showing of conditions under which they were established, the volume of movement thereunder, traffic and transportation conditions and similarity of such conditions with those affecting the rates with which they are compared, are of little probative value. *Buxton-Smith Co.* v. *A., T. & S. F. Ry. Co.*, 89 I. C. C. 373, 376; *Rudolph & Co.* v. *P. R. Co.*, 101 I. C. C. 111, 112; *Somerville Iron Works* v. *C. R. Co. of N. J.*, 101 I. C. C. 683; *Federated Metals Co.* v. *P. R. R. Co.*, 126 I. C. C. 144, 146; *Jackson Traffic Bureau* v. *Alabama, etc.*, 155 I. C. C. 753. And, "A finding without evidence is arbitrary and baseless *(Interstate Commerce Comm.* v. *Louisville & Nashville R. R. Co.*, 227 U. S. 88, 91) and a mistaken conception of the legal effect

of evidence is equally fatal." *Erie City v. Public Service Commission,* 278 Pa. St. 512.

The carrier, at the outset, states that it is very difficult to prove the cost of moving traffic, and then contents itself with the argument that the Interstate Commerce Commission has repeatedly recognized the right of carriers to invoke group rates, since that is the most equitable way of handling same. But this does not seem to answer the question before us. The carrier is not entitled to rest upon its consolidated tariff when it had in its power to present accurate data which would permit the commission to draw the right conclusion. *Minnesota Rate Cases,* 230 U. S. 362.

We do not claim that in all cases it is necessary for the carrier to enter upon a detailed cost-study in respect to a particular rate. Rates can be established to a reasonable certainty by various methods. But, when a party to the controversy offers comprehensive, competent and relevant testimony upon the subject of the costs of the service, we say that the carrier cannot ignor such evidence, and if it does so the law gives to that evidence the same weight that it would have before a judicial body, with the same consequences, namely a decision in favor of the party offering it. So, we are of opinion that the commision did not give due weight to the evidence put in the record by the complainant indicating the cost of the service rendered, and that it gave undue weight to the comparison of tariffs offered by the carrier. As a reversal of the order on this phase of the case will again bring into question the reasonableness of the rate from the Katherine mine, we make no comment in regard to the proof in that particular, except to observe that the testimony of Mr. Williamson relative to rates charged by the C. & O., the N. & W., and the Virginian railways, must be shown to be related to the present line in character of service, cost, etc., to have any evidentiary value.

The order of March 18, 1931, is therefore set aside, and the case remanded for further consideration in conformity with this opinion.

*Reversed and remanded.*